SARAH L. VAN INWAGEN v. JACOB VAN INWAGEN.

*Divorce—Alimony—Pleading—Contempt proceedings.*

1. The circuit courts may, in their discretion, upon application as in other cases, divorce from the bonds of matrimony any party who is a resident of this State, and whose husband or wife shall have obtained a divorce in another state (How. Stat. § 6228, subd. 6), and may order the payment of alimony as in other cases (*Wright v. Wright*, 24 Mich. 180).

2. Where a divorce is sought by the wife on other grounds than the granting of a prior divorce to the husband in another state, which fact he sets up in a cross-bill in bar of the relief sought, the complainant is not required to answer such new matter, nor is the court ousted of jurisdiction to decree the payment of temporary alimony and expenses, and to enforce such payment by contempt proceedings.

3. Verifying an answer in chancery gives it no greater effect than if unsworn, where an answer under oath is waived in the bill.

Appeal from Hillsdale.   (Lane, J.)   Argued May 15, 1891.   Decided June 5, 1891.

Bill for divorce.   Defendant appeals from an order adjudging him guilty of contempt in not paying alimony. Order affirmed.   The facts are stated in the opinion.

*Koon & Chester,* for complainant.

*Jacob V. Rogers,* for defendant, contended:

1. The relation of husband and wife lies at the foundation of the question of granting alimony of any kind, and when that relation does not exist no divorce can be granted, and no alimony is allowed save on its existence, and even when it is in dispute the same rule applies; and where the same marriage has once been dissolved between the same parties by a court of competent jurisdiction, the decree and suit would be *res judicata* and a question of law, under which the marriage relation would cease to exist; citing *Collins v. Collins,* 71 N. Y. 269, 80 Id. 1; *Adams v. Cameron,* 40 Mich. 506, 511; *Pettiford v. Zoellner,* 45 Id. 358; *Waldo v. Waldo,* 52 Id. 94; 5 Amer. & Eng. Enc. Law, 384.

2. The Indiana divorce is set up in defendant's answer, which we claim severed the marriage relation, so that none existed when the bill was filed, which fact complainant does not deny in any way; hence the court was not justified in making the allowance asked for.

LONG, J. This is an appeal from an order and decree of the circuit court in chancery of Hillsdale county adjudging the defendant guilty of contempt of court in refusing to pay an allowance for alimony and expenses *pendente lite.*

The decree recites that—

"The defendant, being in court in person and by his solicitor, J. V. Rogers, admits in open court that an order was made in this cause by said court February 17, 1890, requiring this defendant to pay $250 within eight days for temporary alimony, solicitors' fees, and costs, and that a certified copy of said order was duly served upon him, and that a proper written and verbal demand for the payment of the same was duly made upon this defendant, and that he refused and still refuses to pay said alimony, or any part thereof, and says he refuses to pay said alimony because he is advised and believes the court had no jurisdiction, under the pleading and petition in this case, to make any order requiring the payment of temporary alimony, etc.

'Therefore, it now appearing to the court, by the voluntary admissions and showing in open court by the

said defendant, Jacob Van Inwagen, that he has committed the contempt with which he is charged, in refusing to pay the temporary alimony, etc., allowed by the order of this court made February 17, 1890, and this court now adjudging him to have been guilty of the misconduct alleged, and that such misconduct was calculated to defeat, impair, impede, and prejudice the rights of the complainant in this case, it is, on motion of E. L. Koon and Guy M. Chester, solicitors for complainant, ordered that the said defendant, Jacob Van Inwagen, pay to the solicitors for the complainant the temporary alimony, etc., now due on said order made February 17, 1890, being the sum of $250.

"And it is further ordered that the said defendant, Jacob Van Inwagen, be, and he is hereby, directed to stand committed to the common jail for the county of Hillsdale, there to remain charged with this contempt until he shall have caused said sum of $250 to be paid to said solicitors for complainant, or until discharged by due course of law; and that a warrant issue for that purpose."

On an appeal being taken to this Court, the defendant was admitted to bail in the sum of $500 by the circuit judge.

The claim by defendant's counsel is that the court had no jurisdiction to compel the defendant to pay any sum as alimony, by reason of facts set up in the answer of defendant by way of cross-bill, and- to which the complainant did not answer, except by filing general replication.

The complainant's bill charges that she intermarried with the defendant, August 18, 1851, at the town of Lyons, Wayne county, N. Y., and that the parties lived and cohabited together as husband and wife; that she has resided in this State for a period of one year and upwards immediately preceding the time of filing this bill, and still resides in and is an inhabitant of the county of Hillsdale, this State.

She alleges in her bill that, four years prior to their

said marriage, she kept company with the defendant, and that in the year 1849 the defendant seduced her upon a promise of marriage, the child being born October 20, 1850, and that the marriage took place between them the following August. By the bill it is made to appear, further, that the child died in 1864; that soon after the marriage the defendant left her, and went to the State of Michigan, but before going he published, or caused to be published, a notice in the newspapers circulated in Wayne county, N. Y., notifying all persons not to board or trust the complainant; that, after an absence of about one year, the defendant returned to New York, and lived and cohabited with the complainant for a time, and stayed there most of the three years following the fall of 1852, the complainant living with her father, and the defendant with his father, but he staying with her frequently, and cohabiting with her as his wife; that in 1855 he again went to Michigan, and returned in the spring of 1856, remaining there until the fall of that year, living and cohabiting with the complainant a portion of the time; that in the fall of 1856 complainant, with their daughter, came to Michigan with the defendant, and stayed about six months; that, in consequence of her husband's not furnishing her any home, she and her daughter returned to Lyons, N. Y., about March 1, 1857; that the defendant returned to Lyons, N. Y., in June or July following, and claimed that he had not yet got things ready for the complainant to come to Michigan, but, as soon as possible after his return to Michigan, he would send for complainant; that he then returned to Michigan, and remained until the year 1862, when he came back to New York, remaining a short time, when he returned to Michigan, and did not return to New York until August, 1864, soon after the death of their daughter; that he then paid the doctor's bill and the

funeral expenses of the daughter; that during the fall he went back to Michigan, and the complainant saw no more of him until the year 1887, but complainant claims that she frequently received letters from him during these years. In the fall of 1887 it is charged that defendant came to New York, and tried to induce the complainant to come with him to Michigan. · She did not return with him at that time, but on receipt of a letter from him in May, 1888, inclosing money for her expenses, and at his solicitation, she came to Michigan, was met by the defendant at the depot, and accompanied him to his home in Hillsdale county, where she has continued to reside, and to live and cohabit with the defendant as his wife, taking care of his house.

The bill then charges that, soon after, the defendant commenced to treat her in a most cruel way, calling her vile names, and threatening to turn her out of doors, and striking her with his fists. The bill also charges that the defendant has become an habitual drunkard.

It is charged that the defendant owns a large and valuable farm of about 90 acres, with a brick house thereon, situated in the said Hillsdale county, and that the complainant has no property or means of her own. Answer under oath is waived by the bill.

The answer of the defendant, which is under oath, admits—

"That on or about the 18th day of August, A. D. 1851, he was supposed to be married to the complainant in the town of Lyons, Wayne county, New York, but emphatically denies that said parties did ever after said marriage ceremony live and cohabit together as husband and wife, and denies that said defendant ever seduced the complainant upon promise of marriage, or that he ever got her in a family way by such promise, * * * but admits that on or about the 20th day of October, 1850, the complainant gave birth to a child, * * * but

as to who the father of the child was this defendant had no knowledge, as he had reason to believe and does believe that, prior .to the birth of said child, several different men were having sexual intercourse with said complainant, and had had for some time prior thereto."

The defendant also claims that he was coerced into the marriage with complainant, if any legal marriage ever took place between them. The answer also denies that defendant ever lived or cohabited with complainant after the marriage ceremony was performed, either in New York or in Michigan, and alleges that after complainant came to Michigan, in 1888, she came to his house as his housekeeper, and, when he learned that she was claiming to be his wife, he procured his sister, with her family, to move into the house with them. He denies that he has treated her cruelly, or that he is in the habit of getting intoxicated, and claims that no marriage relation exists between them.

The answer sets up, by way of cross-bill, that the defendant procured a divorce in the state of Indiana from complainant in the year 1853, and that he was a resident of that state at that time. This decree of divorce appears to have been obtained upon publication of an order. No notice, except by publication, was ever given to complainant, and the only claim made of notice to her is by the defendant in his answer that, about a year after this divorce was granted, he exhibited to the complainant a copy of the decree of divorce.

It is substantially under this state of facts that the court below made the order adjudging the defendant guilty of contempt in refusing to pay the alimony awarded.

We are of opinion that the order was properly made. The facts set up in the cross-bill relative to the defend-

ant procuring a divorce in the state of Indiana would not, if true, oust the circuit court in chancery for Hillsdale county of jurisdiction. It is provided by subdivision 6, § 6228, How. Stat., that—

"The circuit courts may, in their discretion, upon application as in other cases, divorce from the bonds of matrimony any party who is a resident of this State, and whose husband or wife shall have obtained a divorce in any other state."

In *Wright v. Wright*, 24 Mich. 180, it appeared that a bill was filed for divorce on the ground that the defendant, being a resident of this State, had gone into the state of Indiana, and there, without notice to or appearance by the defendant, had procured a divorce from her. The court below found the facts as alleged, and decreed a divorce as prayed. The defendant appealed on the ground that, the Indiana divorce being entitled to full faith and credit under the Constitution of the United States, there was no longer any marriage bond for the court to adjudicate upon, and therefore it was not competent for the Michigan court to assume to dissolve what no longer existed. After the statement of the case, it was said by this Court:

"We do not by any means concede, however, that, if the Indiana divorce had been valid, no relief of the nature demanded could have been granted to complainant in this State. Assuming, as we must, to give to the court in Indiana any jurisdiction, that defendant resided within that state, the case would be such that both that state and this had authority in respect to the marriage relation to determine upon its validity or to dissolve it, so far as the party resident within its own limits is concerned. If one proceeds first, there is no legal impediment to the other's taking like steps afterwards, if it appears important to the protection of any property or other rights."

Referring to the statute above quoted, it was further said:

"Our Legislature has thought in some cases it might

be necessary to do so, and has provided for it by statute."

The appeal in that case was from an order allowing alimony, and it was said upon that question by CAMPBELL, C. J.:

"We see no difference between this and any other divorce suit, so far as the question of alimony is concerned."

In the present case the bill expressly waived answer under oath. The answer is sworn to by defendant, and it is therefore claimed that the new matter alleged in the answer by way of cross-bill in reference to the Indiana divorce could not be met by general replication, but must be answered or pleaded to, and that, therefore, it appeared that there was no marriage existing between the parties at the time this order for alimony was entered. The reasons, as stated in brief of counsel for defendant, why the order should be set aside, are—

1. That complainant has not in and by her said bill of complaint stated such a case as entitles her to either temporary or permanent alimony; that there is no equity in her bill; that it is contradictory and inconsistent, and sets up no allegations against the marriage relation sufficient to entitle her to any relief.

2. That defendant has filed an answer under oath, denying all the allegations that were material in such bill; that he filed a further answer, in the nature of a cross-bill, in which he pleads a bar in the former suit, declaring the same marriage contract dissolved that existed between these parties, and set up in her bill, more than 30 years before the commencement of her suit, and he asks the court to hold the sam *res judicata;* to which said answer and cross-bill the complainant has never made answer, or denied, or got permission to amend her original bill, or in any way amend her bill under the statute, alleging for cause of divorce the provisions of subdivision 6, above quoted.

The facts stated in the bill, if true, certainly warranted the court in making the order for alimony. It appears

from the bill that the defendant has been guilty of the most extreme cruelty to the complainant, and the allegations in his answer charging her at this late date with criminal intercourse with other men, at a time prior to his marriage to her, does not aid his case, and is deserving, even if true, of the severest censure. If he has pursued such a course towards the complainant as set up in the bill, finally inducing her to come to Michigan, and here lived and cohabited with her as ·his wife, and then treated her with extreme cruelty, by striking her with his fists, and calling her vile and indecent names, and finally denying that she was his wife or that he was ever legally married to her, it certainly contradicts the assertion made by the defendant in his brief "that there was no equity in her bill."

The fact that the answer was sworn to gives it no greater effect than though it had been filed without oath, as the answer under oath was expressly waived by the bill.

The new matter set up in the answer relative to the Indiana divorce is not such as required the complainant to answer to, for, even admitting it to be true that the courts of Indiana had jurisdiction to grant the divorce, and a valid divorce was obtained by the defendant, yet it was one of the causes for divorce given to the complainant by the statute. She did not set that ground up in her bill as a cause-for divorce, and the defendant, under the statute, could not be permitted to plead it as a bar to her further proceeding under her bill upon the facts stated therein.

We think the court justified in holding the defendant guilty of contempt, and his order and decree therein must be affirmed, with costs.

The other Justices concurred.